IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTURO MORENO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2757 |
| | § | |
| PERFECTION COLLECTION, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

**I.    Background**

The plaintiff, Arturo Moreno, moves for final default judgment against the defendant, Perfection Collection, LLC. The court granted Moreno's request for entry of default because Perfection Collection failed to answer the complaint, as required by Federal Rule of Civil Procedure 12(a)(1). FED. R. CIV. P. 12(a)(1), 55(a). Moreno has filed affidavits and exhibits in support of his claims for actual and statutory damages and reasonable attorneys' fees under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* Notice to the defendant and further hearings are not necessary. FED. R. CIV. P. 55(b)(2). Based on the complaint, motion, affidavits, exhibits, and applicable law, the motion for default judgment is granted as to statutory damages, but it is denied as to actual damages. Moreno is also entitled to costs and fees as set out below.

Perfection Collection, LLC is a Utah business operating as a collection agency. It is a "debt collector" under 15 U.S.C. § 1692(a)(6). (Docket Entry No. 1 at ¶¶ 9–14). Moreno alleges that beginning in January 2018, he discovered that Perfection Collection was reporting to Trans Union that he owed a debt for services or equipment from Vivant. (*Id.* at ¶¶ 16–17). After noticing in May

2018 that Perfection Collection was also reporting the debt to Experian, Moreno submitted the disputes to the credit bureaus to have the debt removed from his credit reports. (*Id.* at ¶¶ 18–19). After the request met no success, Moreno contacted Perfection Collection to challenge the debt. (*Id.* at ¶¶ 19–20).

Perfection Collection provided Moreno a copy of a contract signed by an Arturo Moreno. (*Id.* at ¶ 21). The contract listed this Arturo Moreno's date of birth as 1976, his address as Sherrie Lane in Desoto, Texas, and his phone number as ending in 6246. (*Id.*). Moreno alleges that he was not born that in year, has never lived at that address, and has never had that phone number. (*Id.* at ¶ 22). Based on these discrepancies, Moreno alleges that the reported debt belongs to a different Arturo Moreno. (*Id.* at ¶ 23).

Moreno called Perfection Collection in May to inform the company that he was not the Moreno identified in the contract and that he had not done business with Vivint. (*Id.* at ¶¶ 24–26). Perfection Collection refused to remove the debt from Moreno's credit reports. (*Id.* at ¶ 27). Moreno alleges that Perfection Collection continues to report to various consumer reporting agencies that he owes the debt. (*Id.* at ¶ 28).

## II. Analysis

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Under Rule 55(b)(2), a party may move for default judgment, and the "court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C)

establish the truth of any allegation by evidence; or (D) investigate any other matter." FED. R. CIV. P. 55(b)(2). Local Rule 5.5 requires that motions for default judgment "be served on the defendant-respondent by certified mail (return receipt requested)." S.D. TEX. L.R. 5.5.

Default judgment is a "drastic remedy, not favored by the Federal Rules and resorted to by the courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver." *Id.*

The purpose of the Fair Debt Collection Practices Act is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. The Act prohibits debt collectors from "using any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Section 1692 of the Act applies. A "debt collector" under the Act is "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 1692a(5). The Act defines a "consumer" as "any natural person obligated or allegedly

3

obligated to pay any debt." § 1692a(3). The evidence shows that Moreno is a "consumer" as defined by § 1692a(3), Perfection Collection is a "debt collector" as defined by § 1692a(6), and Perfection Collection attempted to collect a "debt" from Moreno through its debt reporting to credit bureaus. (*See* Docket Entry No. 1).

To establish liability, Moreno must allege facts showing that Perfection Collection did not comply with the Act. 15 U.S.C. § 1692e. Section 1692e states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* Moreno generally alleges violations of this section. He also specifically alleges that Perfection Collection violated § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The Act defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Reading these provisions together, § 1692e appears based on "the basic fraud law principle that, if a debt collector elects to communicate 'credit information' about a consumer, it must not omit . . . that the consumer has disputed a particular debt." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008) (emphasis omitted).

Moreno alleges that he informed Perfection Collection that he disputed the debt through his May 2018 phone call with a Perfection Collection representative. (Docket Entry No. 1 at ¶¶ 25–29). While § 1692(e) does not define "disputed," courts have liberally interpreted the term to include phone calls. *See, e.g.*, *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) ("Oral dispute of a debt precludes the debt collector from communicating the debtor's credit information

4

to others without including the fact that the debt is in dispute."); *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) (Congress did not intend to require disputes to be in writing under § 1692(e)(8)); *Carter v. Credit Bureau of Carbon City*, No. 1:14-cv-00873-JLK, 2015 WL 4450698, at *3 (D. Colo. July 20, 2015) (the plaintiffs' three phone calls to the debt collector stating that her insurance should have paid the debt was a "dispute" of the debt). Moreno's complaint sufficiently alleges that he disputed the debt and that Perfection Collection continued to report the debt to credit bureaus after he disputed its validity. (Docket Entry No. 9-1 at ¶¶ 12–13 ("Perfection Collection responded to my disputes to the credit bureaus by verifying the collection account as accurate. . . . . [E]ven after I spoke with Perfection Collection and informed them that this was not my debt, Perfection Collection has continued to attempt to collect from me.")). Moreno's complaint alleges facts showing a violation of § 1692e. (Docket Entry No. 1). Perfection Collection allegedly communicated false credit information to third parties, even after that the debt was disputed through Moreno's correspondence and requests to remove the debt from his credit reports. (*Id.* at ¶¶ 27–28). Perfection Collection's failure to answer or otherwise appear entitles Moreno to final judgment that Perfection Collection has violated the Fair Debt Collection Practices Act and that Moreno is entitled to damages.

Moreno seeks (1) $1,000 in statutory damages; (2) $5,000 for actual damages; and (3) attorneys' fees and costs. (Docket Entry No. 9 at 4). Although a plaintiff is eligible to receive up to $1,000.00, the court has the discretion to set the amount. 15 U.S.C. § 1692k(a)(2)(A). The court considers, among other factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." § 1692k(b)(1). "A Plaintiff need not establish malice, but a mere technical or bona

fide error may be a defense to recover under the statute." *Molinar v. Coleman*, No. 3:08-CV-1430-M, 2009 WL 435274, at *2 (N.D. Tex. Feb. 20, 2009).

Moreno alleges that he first noticed that Perfection Collection was wrongfully reporting the debt as his to credit bureaus in January 2018, and that he tried to have the debt removed from those reports from January to May 2018. (Docket Entry No. 1 at ¶¶ 18–19). He alleges that he disputed the debt with Perfection Collection in May 2018 and that later, on a call with a Perfection Collection representative, he explained that his personal information did not match that associated with the debt. (*Id.* at ¶¶ 24–26). His affidavit states that "Perfection Collection responded to [his] disputes to the credit bureaus by verifying the collection account as accurate." (Docket Entry No. 9-1 at ¶ 12). He also alleges that Perfection Collection continued to report the debt even after his phone call with the representative. (*Id.* at ¶ 13).

These allegations, taken as true, establish that the debt collector received notice on at least one occasion of its noncompliance. The court, however, cannot determine whether the violations were intentional. An award of $200.00 in statutory damages is appropriate to compensate Moreno for the alleged violations. *See, e.g.*, *Molinar*, 2009 WL 435274, at * 2 (awarding $250.00 in statutory damages when the plaintiff could show repeated communications from the debt collector violating the Act, but the plaintiff did not provide sufficient evidence to show "the nature of frequency of the communications, or . . . [whether] the violations were intentional"); *Cole v. Truelogic Fin. Corp.*, No. 07-CV-0388, 2009 WL 261428, at *2 (W.D.N.Y. Feb.4, 2009) (granting default judgment and awarding $500.00 when the plaintiff provided evidence of the defendant's intentional violations of the Act); *Wiener v. Bloomfield*, 901 F. Supp. 771, 778 (S.D.N.Y. 1995)

(granting a plaintiff $350.00 in statutory damages for multiple violations of the Act because the plaintiff neither pleaded nor proved actual damages).

The Act permits damages for "not only out-of-pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish, and emotional distress." *Browne v. Portfolio Recovery Assocs., Inc.*, No. H-11-02869, 2013 WL 871966, at *5 (S.D. Tex. Mar. 7, 2013) (citing Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,109 (Dec. 13, 1988) (damages under the Act include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress")). To recover actual damages, a plaintiff must offer "direct evidence of the nature, duration, and severity of the mental anguish" that shows "a substantial disruption in the Plaintiff['s] daily routine." *Reyelts v. Cross*, 968 F. Supp. 2d 835, 846 (N.D. Tex. 2013). Actual evidence of distress and injury is necessary, and conclusory statements will not suffice. *Harrington v. Nat'l Enter. Sys., Inc.*, No. 4:08-cv-422, 2010 WL 890176, at *4 (E.D. Tex. Mar. 9, 2010). "[C]ourts must 'closely scrutinize' awards of mental anguish damages." *Bullock v. Abbott Ross & Credit Servs., LLC*, No. A-09-cv-413, 2009 WL 4598330, at *3 (W.D. Tex. Dec. 3, 2009) (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997)).

Moreno also seeks actual damages for suffering "personal humiliation, embarrassment, mental anguish and emotional distress." (Docket Entry No. 1 ¶ 30). Moreno's complaint and affidavit, which repeats almost verbatim the complaint's allegations, include only conclusory statements of humiliation, embarrassment, mental anguish, and emotional distress. Those allegations are an insufficient basis to recover emotional damages under the Act. Because he has not provided any evidence of distress and injury, Moreno's request for actual damages is denied.

Moreno also seeks $4,082.50 in attorney's fees, an additional $400.00 for filing the complaint, and $125.00 in costs for service of process. (Docket Entry No. 9 at 7). He requests a total amount of $4,607.50. (*Id.*). Under 15 U.S.C. § 1692k(a)(3), a plaintiff is entitled to reasonable attorney's fees and costs in a successful action under the Act. Because Moreno is entitled to statutory damages, he is also entitled to reasonable attorney's fees.

The Fifth Circuit uses the lodestar analysis to determine reasonable attorney's fees. *Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 650 (S.D. Tex. 2008) (citing *Forbush v. J.C. Penny Co.*, 98 F.3d 817, 821 (5th Cir. 1996)). The lodestar amount is "the product of reasonable hours times a reasonable rate." *Pennsylvania v. Del. Valley Council for Clean Air*, 478 U.S. 546, 647 (1986). There is a "'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).

The lodestar amount may be adjusted up or down to ensure that the award is reasonable. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir.1995); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). When deciding whether and to what extent to depart from the lodestar, the court considers the factors that include: "the time and labor required to represent the client . . . the novelty and difficulty of the issues in the case; . . . the skill requisite to perform the legal services properly . . . the customary fee charged for those services in the relevant community; . . . the nature and length of the professional relationship with the client; and . . . awards in similar cases." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 n.11 (5th Cir. 2003); *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.

1974). The most important factor is the "degree of success obtained." *Singer*, 324 F.3d at 829 (quoting *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998)).

The first step in the lodestar analysis is to determine the reasonable hourly rate. Larry P. Smith charged $500.00 per hour, David M. Marco charged $450.00 per hour; Leroy B. Scott and Andrew C. Wilson charged $250.00 per hour; and a paralegal charged $145.00 per hour. Moreno argues that the Laffey Matrix, a rate schedule created by the U.S. Department of Justice for attorneys in the Washington area, supports his request. (Docket Entry No. 9-3). The Fifth Circuit does not use the Laffey Matrix to evaluate reasonable attorneys fees. *Malick v. NCO Fin. Servs. Inc.*, No. H-14-1545, 2015 WL 4078037, at *4 (S.D. Tex. July 6, 2015). Instead, "'reasonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886 (1984)). "The prevailing market rates for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate." *Villegas v. Regions Bank*, H:11–cv–904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

Attorneys in cases under the FDCPA within the Southern District of Texas, Houston Division, are generally awarded fees using a $300.00 hourly rate. *See, e.g., Malick,* 2015 WL 4078037, at *3 (a $300.00 hourly rate was reasonable for a lawsuit under the Act); *Serna v. Law Office of Joseph Onwuteaka, PC*, No. 4:11–CV–3034, 2014 WL 3749652, at *5 (S.D. Tex. July 29, 2014), *aff'd*, 614 F. App'x 146 (5th Cir. 2015) (a $300.00 hourly rate was reasonable in a Fair Debt Collection case for a litigator with 21 years of experience); *Memon v. Pinnacle Credit Servs., LLC*, No. 4:07–CV–3533, 2009 WL 6825243, at *4 (S.D. Tex. May 21, 2009) (a $300.00 hourly rate was

9

reasonable in a Fair Debt Collection Practices case for a litigator with 18 years of experience). Survey data specific to the Houston legal market supports the reasonableness of the $300.00 hourly rate for lawyers. *See* State Bar of Texas, Dep't of Res. & Analysis, 2015 Hourly Fact Sheet (2016), https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDisplay.cfm&ContentID=34182. Moreno's motion further supports the conclusion that $300.00 is a reasonable rate. A footnote in the discussion of attorney's fees notes that only a few years ago, Smith and Marco were charging $385.00 and $300.00 per hour, respectively. (Docket Entry No. 9 at 7, n.1).

The record does not support the variance above the $300.00 hourly rate that two of Moreno's attorneys, Smith and Marco, seek. Based on the record and applicable law, the court finds that the hourly rates Moreno's attorneys submitted are higher than the prevailing rate, reducing Smith's rate to $300.00 and Marco's rate to $295.00. Because Scott and Wilson's rates are close to the prevailing rate, they are reasonable and not adjusted.

Paralegal work was charged at an hourly rate of $145.00. A recent decision in the Houston Division of the Southern District of Texas concluded that a reasonable rate for legal-assistant work in a similar case was $125.00 . *Knoerr v. Pinnacle Asset Grp., LLC*, No. H-16-599, 2017 WL 2118975, at *2 (S.D. Tex. May 16, 2017). That rate is applicable here as well.

The second step in the lodestar analysis is to determine the number of hours reasonably spent on the litigation. Courts exclude excessive, redundant, or unnecessary hours and may deduct a reasonable percentage of reported hours. The applicants must show that the hours billed are reasonable. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).

Moreno submitted a table showing the hours his attorneys billed and a time sheet detailing them. (Docket Entry No. 9 at 7; Docket Entry No. 9-2). Four attorneys and one legal assistant collectively spent 13.9 hours on this case. (Docket Entry No. 9-2).

Reasonable hours do not include hours spent on clerical or nonlegal tasks. *See Johnson*, 488 F.2d at 717 ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such nonlegal work may command a lesser rate."); *Malick*, 2015 WL 4078037, at *5 (subtracting from the total time spent on administrative tasks); *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July, 17, 2014) (omitting from the calculation of reasonable hours the time the attorneys spent on clerical tasks). Courts have found tasks such as reviewing and calendaring deadlines; printing, copying, and filing documents; drafting cover letters; ordering transcripts; organizing and updating materials and binders; loading and organizing computer databases; redacting and assembling exhibits; and transmitting documents all to be noncompensable. *See, e.g.*, *Black*, 2014 WL 3534991, at *6; *Action Oilfield Servs., Inc. v. Mantle Oil & Gas, L.L.C.*, No. CIV.A. 13-4866, 2014 WL 2465310, at *5 (E.D. La. Jun. 2, 2014); *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09–CV–0752–D, 2011 WL 487754, at *8 (N.D. Tex. Feb. 11, 2011).

Several entries are for what appears to be clerical work. For example, an entry of 0.2 hours by Nicole Dycha explains the activity as simply "[f]ile affidavit of service." (Docket Entry No. 9-2 at 2). Another entry for 0.3 hours by Nicole Dycha describes the activity as "Open New Case File: Received Attorney Instruction and Open File; Add Client Contact and Open Time Keeping File and

11

document folder." (*Id.* at 4). Based on the description, the court finds that the 0.5 hours of what appears to be paralegal time was spent on clerical tasks. The paralegal's hours are reduced by 0.5 to 3.0 hours.

The remaining hours presented through the table and time sheet are reasonable considering the length of time required to prepare a complaint, do legal research, and submit the motions for entry of default and for a default judgment.

The time sheet is orderly and detailed. The court finds that 13.4 hours is a reasonable amount of time to spend on this case.

Multiplying Larry P. Smith's reasonable hours by his reasonable hourly rate results in a lodestar amount of $810.00 (2.7 x $300.00 = $810.00). The same calculation for David M. Marco results in $442.50 (1.5 x $295.00 = $442.50). The lodestar amount for Leroy B. Scott is $425.00 (1.7 x $250.00 = $425.00), $1,125.00 for Andrew C. Wilson (4.5 x $250.00 = $1,125.00), and $375.00 for the paralegal work (3.0 x $125.00 = $375.00). The total lodestar amount for attorney's fees is $3,177.50. No further adjustments using the lodestar factors is necessary.

Moreno also seeks $525.00 in costs. Under the FDCPA, a debt collector is liable to a successful plaintiff for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The costs include the cost of filing the complaint and the cost of service of summons. The court finds and concludes that the defendants are liable for the $525.00 in itemized costs. *See* 28 U.S.C. § 1920.

## IV. Conclusion

The court enters final default judgment against Perfection Collection, LLC, granting Moreno's motion for statutory damages in the amount of $200.00 and awarding costs of $450.00 and fees of $3,177.50. Moreno's motion for actual damages is denied.

SIGNED on December 5, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge